UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROXANNE ORTEGA-MURILLO,<br><br>Plaintiff,<br><br>v.<br><br>VANCOUVER SCHOOL DISTRICT and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  C04-5651RJB<br><br>ORDER |

This matter comes before the Court on Vancouver School District's Motion for Summary Judgment (Dkt. 32). The Court has reviewed all documents filed in support of and in opposition to the motion and has reviewed the entire file herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On August 22, 2002, the Vancouver School District hired Roxanne Ortega-Murillo as a substitute custodial assistant. Dkt. 35 at 1. The District requires that substitute custodians know how to use hazardous chemicals, and the job description for that position states that the work of a substitute custodian "may require use of power tools and/or hazardous chemicals." Dkt. 34, Exh 3 at 1.

ORDER - 1

At the time of her employment, Ms. Ortega-Murillo became a member of the Service Employees International Union (SEIU), Local No. 9288. Dkt. 35 at 1. She received a copy of the collective bargaining agreement and attended the union's annual meeting the following year. *Id.* at 1-2.

On November 21, 2003, Ms. Ortega-Murillo met with Ellyn Papenfuse, a District Human Resource Specialist, and told her that she believed that she was pregnant, was scheduled to meet with her doctor about her suspicion, and had a history of failed pregnancies. Dkt. 34 at 1. On November 24, 2003, Ms. Ortega-Murillo was granted regular employment as a custodial assistant. Dkt.35 at 2. After her doctor confirmed that she was pregnant, she informed the District of this fact. Ms. Ortega-Murillo was given several Material Safety Data Sheets (MSD Sheets) for the chemicals used by the District. Dkt. 35 at 2. She was instructed to provide the information to her doctor, Dr. Seacat. Dkt. 33, Exh. 2 at 2.

Ms. Ortega-Murillo did show the MSD Sheets to Dr. Seacat. Dkt. 33, Exh. 2 at 3. Dr. Seacat refused to read the MSD Sheets on the grounds that "he was not a chemist and that the school should be more aware of hazards the [sic] he would be." Dkt. 33, Exh. 2 at 3. On December 5, 2003, Dr. Seacat wrote a letter excusing Ms. Ortega-Murillo from working with hazardous chemicals. Dkt. 33, Exh. 8 at 2. There is no indication in the record that Dr. Seacat defined the term "hazardous chemicals" as used in his letter dated December 5, 2003. In a subsequent letter, Dr. Seacat clarified his earlier letter, stating that its purpose was "to excuse patient from use of hazardous chemicals, ie. [sic] chemical substances on MSDS list." Dkt. 33, Exh. 8 at 2.

On December 11, 2003, Ms. Ortega-Murillo again met with Ms. Papenfuse. Ms. Papenfuse told her that "because the restriction prevented her from being able to work in her position as a custodian, the District needed to put her on long-term leave without pay." Dkt. 34 at 2. Ms. Ortega-Murillo completed the paperwork to request long-term leave without pay. *Id.* Ms. Papenfuse asked her if she had any questions, and she stated that she did not. *Id.*

ORDER - 2

On February 2, 2004, Ms. Ortega-Murillo filed a complaint with the EEOC. Dkt. 35-25, Exh. 8 at 2. The complaint alleged discrimination on the basis of sex, disability, and pregnancy. *Id.* It stated Ms. Ortega-Murillo's belief that the chemicals she worked with while employed with the District were not hazardous, were used in classrooms, and were automatically contained and dispensed. *Id.* In its reply to the EEOC complaint, the District stated that Dr. Seacat's restriction on Ms. Ortega-Murillo's use of hazardous chemicals was the sole barrier to her employment with the District and that the District would be willing to reinstate her if her health conditions changed or if Dr. Seacat determined that the chemicals used by District custodians did not pose a risk to Ms. Ortega-Murillo's health. Dkt. 35-27. The EEOC was unable to determine that the District had committed a violation. Dkt. 33-10.

After giving birth on June 23, 2004, Ms. Ortega-Murillo returned to work as a custodian for the District and remains a District employee.

On October 1, 2004, Ms. Ortega-Murillo filed suit in federal district court against the Vancouver School District. Her complaint asserts due process violations, retaliation, and claims for pregnancy and gender discrimination in violation of state and federal law. Dkt. 1-1. She seeks an injunction, damages, costs, attorney and expert witness fees, and pre- and post-judgment interest.

On August 25, 2005, the District filed a motion for summary judgment seeking dismissal of all of Ms. Ortega-Murillo's claims.

## II. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317,

ORDER - 3

323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### B. DUE PROCESS

Ms. Ortega-Murillo contends that her right to due process arising under the Fourteenth Amendment was violated and seeks a civil remedy pursuant to 42 U.S.C. § 1983. Ms. Ortega-Murillo contends that she was deprived of the right to confront witnesses and accusers and to defend against the District's charges and accusations before her right to work with the District during her 8 month leave was taken from her.

The District moves for summary judgment on the plaintiff's due process claims on three grounds. First, the District argues that Ms. Ortega-Murillo did not have a property interest in her employment. Second, the District argues that even if she did have a property interest, she

ORDER - 4

relinquished it voluntarily. Third, the District argues that it complied with any due process requirements. The plaintiff has failed to respond to the District's motion as required by Local Rule CR 7, which provides the following:

> Each party opposing the motion shall, within the time prescribed in CR7(d), file with the clerk, and serve on each party that has appeared in the action, a brief in opposition to the motion, together with any supporting material of the type described in subsection (1). If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.

Local Rule CR 7(b)(2). Regardless of that rule, the court should not grant summary judgment unless the papers on file under Federal Rule 56 support such a ruling.

The Fourteenth Amendment protects individuals from the deprivation of property without due process of law. There are three elements for procedural due process claims under § 1983: (1) a property interest protected by the Constitution; (2) a deprivation of that interest by the government; and (3) a lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A public employer may meet its due process obligations by providing a collective bargaining agreement if that agreement contains grievance procedures that satisfy due process. *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992).

There are two possible challenges to the procedures established by a collective bargaining agreement: unconstitutionality on its face and unconstitutionality as applied. *Id.* Ms. Ortega-Murillo apparently attempts to challenge the constitutionality of the collective bargaining agreement on both grounds. Dkt. 1 at 5 ("Plaintiff was not given the opportunity to defend the charge or accusations or to confront her accusers. Plaintiff attempted to mediate the matter to no avail."), 8 ("The process due plaintiff was not given in this instance and a violation of plaintiff's right for a full post deprivation hearing where she could cross examine witnesses against her regarding these claims"), Dkt. 33-13 at 2-3 ("[P]laintiff called repeatedly to the union with no return phone calls. Plaintiff felt that John Lyons being on the board made for a conflict of interest."). Because the union is not a party to this suit, the court cannot reach the question of whether the collective bargaining agreement was unconstitutionally applied to Ms. Ortega-Murillo or whether the union failed to fulfill its obligation to her.

ORDER - 5

There are three factors the court must consider in determining whether the procedure provided for by a collective bargaining agreement constitutes a lack of due process: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value, if any, of additional or substitute safeguards; and (3) the defendant's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Armstrong v. Meyers*, 964 F.2d 948, 950 (9th Cir. 1992).

Even assuming, for the sake of argument, that Ms. Ortega-Murillo had a substantial private interest in uninterrupted employment with the district or in compensated leave during her pregnancy, she has not established that the risk of being deprived of that interest is great and that additional safeguards are necessary to protect that interest. As the Ninth Circuit recognized in *Armstrong*, collective bargaining agreements commonly have grievance procedures. *Id.* During the various stages of the grievance procedure, the union is charged with a duty of fair representation. *Id.* If an employee is erroneously deprived of a property interest by the grievance procedure, the employee still has at least one additional safeguard by virtue of the union's duty of fair representation. *Id.* In other words, if the grievance procedure produces an unsatisfactory result, the employee may still have a cause of action for the union's breach of the duty of fair representation. *Id.* The plaintiff has failed to create a genuine issue of material fact as to the sufficiency of this safeguard. The court should therefore grant the District's motion for summary judgment with respect to the plaintiff's due process claim.

**C. RETALIATION**

Ms. Ortega-Murillo claims that the District retaliated against her. As a threshold matter, the District urges the court to consider only those acts occurring after December 8, 2003, in support of the plaintiff's retaliation claim. Under oath, the plaintiff identified this date as the

ORDER - 6

beginning of the defendant's discriminatory behavior in her EEOC complaint. Dkt. 35-25 at 2. The evidence of the District's treatment of Ms. Ortega-Murillo is insufficient to create a genuine issue of material fact on whether she was retaliated against, even when the conduct occurring before December 8, 2003, is taken into account. Ms. Ortega-Murillo contends that she was retaliated against for making complaints about discriminatory conduct and about the conditions of her employment at the District (Dkt. 1-1 at 5). The plaintiff makes numerous conclusory allegations, but only those facts based upon her personal knowledge are to be considered in opposition to the motion for summary judgment. *See* CR 56. She claims that the District retaliated against her by refusing her unemployment benefits; by refusing to allow her husband to donate his accumulated leave; by making numerous changes to her schedule in May and June of 2005; and by including additional information in her evaluations even though she had done nothing wrong. Dkt. 33-13 at 3.

The District requests summary judgment on the grounds that the collective bargaining agreement was the plaintiff's sole remedy. Ms. Ortega-Murillo seeks to sue upon rights arising under Title VII and RCW 40.60 rather than those contained within the collective bargaining agreement. Therefore, the collective bargaining agreement is not her sole remedy. *See Adler v. Fred Lind Manor*, 153 Wn.2d 331, 343 (2004).

RCW 49.60.210 provides the following: "It is an unfair practice for any employer . . . to . . . discriminate against any person because he or she has opposed any practices forbidden by this chapter." Washington courts look to federal courts for interpretation of RCW 49.60.210 and use the *McDonnell-Douglas* burden-shifting analysis used to assess Title VII claims. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180 (2001). Therefore, the analyses under Washington and federal law are nearly identical.

The analysis has three components. First, the plaintiff must present a prima facie case of retaliation. *See id.* at 181. If the plaintiff succeeds in presenting a prima facie case, a rebuttable presumption is created, and the burden of production shifts to the employer to produce a legitimate reason for the adverse employment action. *Id.* If the defendant is able to do so, the defendant is entitled to judgment as a matter of law unless the plaintiff is able to create a genuine issue of material fact and prove that the reason produced is pretext for retaliation. *Id.* at 182.

**1. Prima Facie Case of Discrimination**

In order to present a prima facie case for retaliation in violation of either RCW 49.50.210 or Title VII, the plaintiff must prove that she was engaged in a statutorily protected activity and that she suffered an adverse employment action. *Kahn v. Salerno*, 90 Wn. App. 110, 129 (1998). The third prong of the prima facie case requires an improper motive, but the Washington and federal analyses differ. In Washington, the plaintiff must demonstrate that retaliation was a substantial factor behind the adverse action. *Id.* Under Title VII, the plaintiff must demonstrate a causal link between the adverse employment action and the protected activity. *Ray v. Henderson*, 217 F.2d 1234, 1240 (9th Cir. 2000). The District appears to dispute the first and third prongs of the plaintiff's prima facie case. Dkt. 32-1 at 19 ("Ortega-Murillo presents no evidence that the acts, committed by various District employees, were motivated by gender.").

**a. Protected Activity**

The District appears to dispute whether the plaintiff's complaints were protected by contending that she failed to establish that the District's actions were motivated by gender. Dkt. 32-1 at 19. In order for Ms. Ortega-Murillo's complaints about her work environment to constitute protected activity, she must have had a reasonable belief that the District was acting unlawfully. *See Graves v. Dept. of Game*, 75 Wn. App. 705, 712 (1994). She need not prove

ORDER - 8

that the District's actions were, in fact, unlawful. *Id.*

The plaintiff has failed to create a genuine issue of material fact as to whether her complaints about the discriminatory work environment constituted protected activity. While the plaintiff's complaint contends that she "complained of the conditions of her employment . . . and the discriminatory conduct," none of the papers filed to date establish this fact. Dkt. 1-1. Defendant's Interrogatory No. 14 asks the plaintiff to identify every fact supporting her retaliation claim. Dkt. 33-13. The plaintiff's long and detailed response fails to articulate what the conditions of her employment were, what conduct she is alleging was discriminatory, and what complaints she made. *Id.* Absent such facts, there is no evidence upon which the court can conclude that the plaintiff's belief that she was being discriminated against was reasonable. The plaintiff has therefore failed to present a prima facie case with respect to her claim that she was retaliated against for complaining of sexual harassment.

Having determined that the plaintiff failed to demonstrate that she was engaged in a protected activity, the court need not determine whether the plaintiff met the other prongs of a prima facie case, and the plaintiff's case cannot proceed to the remaining stages of the *McDonnell- Douglas* burden-shifting analysis.

**D. PREGNANCY DISCRIMINATION**

Ms. Ortega-Murillo brings claims for pregnancy discrimination "under state and federal law." Dkt. 1-1 at 6. The Pregnancy Discrimination Act amended Title VII to redress discrimination based on a woman's pregnancy. See 42 U.S.C. § 2000e(k). The Act requires employers to treat pregnancy disabilities in the same manner as other temporary medical disabilities for "all employment-related purposes, including receipt of benefits under fringe benefit programs." 42 U.S.C. § 2000e(k). Similarly, the regulations promulgated under the Washington Law Against Discrimination clarified that pregnancy discrimination is prohibited as

ORDER - 9

a form of sex discrimination. *Johnson v. Goodyear Tire & Rubber Co.*, 790 F. Supp. 1516, 1521 (E.D.Wash.1992). The plaintiff has not opposed the District's motion for summary judgment with any affidavits based upon personal knowledge setting forth facts that would be admissible in evidence to show that she was treated in a different manner because she was pregnant. The court should therefore grant the defendant's motion and dismiss the pregnancy discrimination claim.

**E. GENDER DISCRIMINATION**

The District moves for summary judgment on Ms. Ortega-Murillo's state and federal gender discrimination claims. *See* Dkt. 1-1 ("Defendants' maintenance, aiding, and abetting of a discriminatory workplace environment based on gender"). To prevail on her Title VII hostile workplace claim, Ms. Ortega-Murillo must demonstrate the following elements: (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of her plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To prevail on her hostile work environment claim under RCW 49.60.180(3), the plaintiff must demonstrate the following: (1) contact that is unwelcome, (2) that occurs because of gender, (3) that affects the terms or conditions of employment, and (4) that can be imputed to the employer. *Washington v. Boeing Co.*, 105 Wn. App. 1, 10 (2000). To determine whether the conduct affected the terms or conditions of employment, courts look for conduct that is frequent; severe and pervasive; and physically threatening or humiliating rather than merely offensive. *Id*. While the plaintiff cites to many instances in which she claims she was mistreated, she fails to establish that this mistreatment was a result of her gender or that the District's or Mr. Lyons's treatment of her was severe or pervasive. *See* Dkt. 33-13. Therefore, the court should grant the defendant's motion for

ORDER - 10

summary judgment on the plaintiff's gender discrimination claim.

### III. CONCLUSION

The District's showing is sufficient. Its motion for summary judgment of dismissal should be granted. One can only speculate about why Ms. Ortega-Murillo, or her union on her behalf, did not seek other medical counsel in light of her physician's unwillingness to address the underlying question of which, if any, of the chemicals listed in the MSD Sheets presented a risk to her pregnancy. Such a calm and reasoned approach may have prevented this whole problem.

### IV. ORDER

Therefore, it is now

**ORDERED** that Defendant's Second MOTION for Summary Judgment (Dkt. 32) is **GRANTED**, and this case is dismissed.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 19th day of September, 2005.

*Robert J. Bryan*

Robert J. Bryan
United States District Judge